

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4969
Re: Is the Comptroller of Public
Accounts authorized to pay the
expenses of a District Judge
holding court in an adjoining
district at the assignment of
the administrative judge at
the request of the Governor?

Your request for opinion upon the above stated
question has been received and carefully considered by this
department.

The facts stated in your letter disclose that Judge
Chapman of the 110th Judicial District was assigned by Judge
Ewing, Presiding Judge of the 9th Administrative District,
at the request of Governor Stevenson, to hold court in the
99th District Court in Lubbock County, Texas, and the ques-
tion has arisen as to whether the State of Texas or Lubbock
County is liable for Judge Chapman's expenses incurred while
holding court in Lubbock County.

On July 5, 1934, this department in an opinion
written by Honorable Julius F. Franki, Assistant Attorney
General, addressed to you, Vol. 357, p. 559, Letter Opinions
of the Attorney General of Texas, passed on a question simi-
lar to the question here asked. We quote from said opinion
as follows:

"This department is in receipt of your com-
munication of June 29th, relative to the expense
account of Honorable J. D. Wright, District Judge
of the 111th Judicial District of Laredo, Texas.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Geo. H. Sheppard, Page 2

The facts, in substance, are that Judge Wright
of the 111th District exchanged benches with
Judge S. G. Tayloe of the 45th District pur-
suance to an order of the Honorable J. P. Pool,
Presiding Judge of the Administrative District,
by virtue of the provisions of Article 200a of
the Revised Civil Statutes. Judge Wright claims
that the State should reimburse him for his travel-
ing, lodging and other expenses incurred while
sitting on Judge Tayloe's bench rather than the
counties embracing the Administrative District
as provided by Section 10 of Article 200a. The
order of Judge Pool's effecting the exchange of
benches between judges Wright and Tayloe recites
that these two judges agreed to exchange benches
and referred the matter to Judge Pool whereupon
he issued the order.

"Article 200a, which is Chapter 156 of the
Acts, Regular Session, 40th Legislature, provides,
in substance, that the State be divided into nine
administrative judicial districts, each district
to be presided over by one of the district judges,
which presiding judge is nominated by the Governor.
Section 4 of this Act provides that the presiding
judge shall call annually a conference of the
several district judges of the several judicial dis-
tricts composing the Administrative District and
that at the time of such conference or at any time
thereafter, with or without an additional meeting
of the judges it shall be the duty of the presid-
ing judge from time to time to assign any of the
judges of the Administrative District to hold spe-
cial or regular terms of court in any county of
the Administrative District. Section 6 provides
for the transfer of judges from one administrative
district to another.

"Section 10, provides as follows:

"'When the District Judges are assigned under
the provisions of this Act to districts other than
their own district, and out of their own counties,
they shall, in addition to all other compensation
permitted or authorized by law, receive their actual

Honorable Geo. H. Sheppard, Page 3

expenses in going to and returning from, their several assignments, and their actual living expenses while in the performance of their duties under assignments, which expenses shall be paid out of the General Fund of the county in which their duties under assignments are performed, upon accounts certified and approved by the Presiding Judge of the Administrative District.'

"Article 6820 of the Revised Civil Statutes, which has been in effect since 1923, provides as follows:

"'All district judges and district attorneys when engaged in the discharge of their official duties in any county in this State other than the county of their residence, shall be allowed their actual and necessary expenses while actually engaged in the discharge of such duties, not to exceed four dollars per day for hotel bills, and not to exceed four cents a mile when traveling by railroad, and not to exceed twenty cents a mile when traveling by private conveyance, in going to and returning from the place where such duties are discharged, traveling by the nearest practical route. Such officers shall also receive the actual and necessary postage, telegraph and telephone expenses incurred by them in the actual discharge of their duties. Such expenses shall be paid by the State upon the sworn and itemized account of each district judge or attorney entitled thereto, showing such expenses. In districts containing more than one county, such expenses shall never exceed in any one year $100.00 for each county in the district; provided that no district judge or attorney shall receive more than $600.00 in any one year under the provisions of this article. The account for said services shall be recorded in the official minutes of the district court of the county in which such judge or attorney resides, respectively.'

"Article 200a, above referred to, was passed in 1927, but there is no provision therein expressly repealing Article 6820, just quoted, and it must be presumed that the Legislature passed the

Honorable Geo. H. Sheppard, Page 4

Act of 1927 with deliberation and with knowledge of all existing laws on the same subject and it is axiomatic in the construction of statutes that repeals by implication are not favored. In Lewis' Sutherland on Statutory Construction (2nd) Vol. 1, at Page 465, it is said:

"'Repeals by implication are not favored. This means that it is the duty of the court to so construe the acts, if possible, that both shall be operative. When some office or function can by fair construction be assigned to both acts, and they confer different powers to be exercised for different purposes, both must stand, though they were designed to operate upon the same general subject. Considerations of convenience, justice and reasonableness, when they can be invoked against the implication of repeal, are always very potent. There must be such a manifest and total repugnance that the two enactments cannot stand. The earliest statute continues in force unless the two are clearly inconsistent with and repugnant to each other, or unless in the later statute some express notice is taken of the former plainly indicating an intention to repeal it; and where two acts are seemingly repugnant, they should, if possible, be so construed that the latter may not operate as a repeal of the former by implication. These expressions of opinion are supported by numerous cases.'

"Article 1916 of the Revised Civil Statutes, provides as follows:

"'A judge of the district court may hold court for or with any other district judge; and the judges of such courts may exchange districts whenever they deem it expedient.'

"This law has been in effect since 1846 and prior to the passage of the Act of 1927 here involved, it was the authority for the exchange of benches between the district judges of the state. Under this law the judges are authorized to voluntarily exchange benches when any situation demanding such exchange arises. It is the opinion of

Honorable Geo. H. Sheppard, Page 5

the writer that this law is still in force and effect and that same has not been repealed by implication by the law of 1927 and that judges may still voluntarily exchange benches as before and that their expenses incident thereto are to be paid as outlined in Article 6820, above quoted.

"Section 12 of the Act of 1927 provides:

"'The fact that there are now so many cases pending on the docket of the several courts of this state which cannot be reached because of the press of business and the fact that there are other district judges whose time is not all taken creates an emergency and an imperative public necessity * * *:

"In view of this language and the other provisions of this Act it is apparent that it was the intention of the Legislature to create the central agency charged with the duty of equalizing judicial business among the various district judges of the State, charging this central agent, which is the presiding judge, with the power to compel exchange of judges to the end that judicial business be expedited and the docket of the various courts equalized as nearly as possible. Furthermore, it does not appear that the Legislature intended to destroy the privilege of district judges to voluntarily exchange benches by virtue of Article 1916 as has always been the practice.

"It is, therefore, the opinion of the writer that when an exchange of judges is effected by virtue of an order of the presiding judge of an administrative district, under the provisions of the Act of 1927, that the expenses of the judges affected should be paid by the various counties in the district as provided by Section 10 of this Act. On the other hand, when an exchange of benches is effected voluntarily by virtue of Article 1916 of the Revised Civil Statutes the expenses incurred by the judges affected should be paid as outlined in Article 6820 of the Revised Civil Statutes, for which the State would be liable. (Underscoring ours)

Honorable Geo. H. Sheppard, Page 6

"Whether or not an exchange of benches is voluntary or is by virtue of an order of the presiding judge of a judicial district is, of course, a question of fact, and the mere fact that an exchange is entered on the minutes of the district court and is drawn up in the form of a court order does not convert it into a question of law. The order of Judge Pool transferring Judge Wright to the 45th District and transferring Judge Tayloe to the 111th District, which you submitted to us, recites that the two judges mutually consented to an exchange of benches; nevertheless, the whole question was certified to Judge Pool, the presiding judge, and he entered it as an order in his court as required by the Act of 1927. Naturally, a presiding judge would consult the wishes and inquire into the convenience of the district judges involved in effecting an exchange of benches, and as you know this department is not charged with and does not assume the responsibility of passing on questions of fact; nevertheless, the writer is inclined to the view that this order was an order of the presiding judge within the meaning of the Act of 1927 and that it was not a voluntary exchange of judges such as would now be embraced within the provisions of Article 1916, above quoted. . . ."

We think the above quoted opinion correctly states the law.

It is our opinion that your question should be answered in the negative. It is our further opinion that Lubbock County, Texas, is liable for Judge Chapman's expenses.

Pursuant to your request we are returning to you the correspondence you sent us with reference to this matter.

Very truly yours

APPROVED MAR 13, 1943

*[signature]*
Acting ATTORNEY GENERAL OF TEXAS

ATTORNEY GENERAL OF TEXAS

By *[signature]*
Wm. J. Fanning
Assistant

WJF:mp

APPROVED OPINION COMMITTEE BY *[signature]* CHAIRMAN